UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEE ANN LAFAVE,

                    Plaintiff,

v.                                                    7:16-CV-0621
                                                      (GTS)
COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

CONBOY, MCKAY, BACHMAN & KENDALL, LLP                 LAWRENCE D. HASSELER, ESQ.
  Counsel for Plaintiff
307 State Street
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.                           SERGEI ADEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this Social Security action filed by Lee Ann LaFave

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and

Defendant's motion for judgment on the pleadings.  (Dkt. Nos. 7, 8.)  For the reasons set forth

below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for

judgment on the pleadings is granted.  The Commissioner's decision denying Plaintiff's

disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1971, making her 39 years old at the amended alleged onset date and 42 years old at the date last insured.  Plaintiff reported completing the 12th grade.  Plaintiff has past work as a shipping and receiving clerk.  Generally, Plaintiff alleges disability due to lower back problems, a back injury, arthritis, and depression.

### B.    Procedural History

Plaintiff applied for Disability Insurance Benefits on April 23, 2013, alleging disability beginning March 1, 2006.  Plaintiff's application was initially denied on August 16, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a video hearing before ALJ Marie Greener on December 8, 2014, during which the alleged onset date was amended to April 23, 2010.  On January 27, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 11-20.)[1] On May 10, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-3.)

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law.  (T. 13-19.)  First, the ALJ found that Plaintiff was insured for disability benefits under Title II until June 30, 2013.  (T. 13.)  Second, the ALJ found that Plaintiff did not engage in substantial gainful activity between the alleged onset date and the date last insured.

---

[1]    The Administrative Transcript is found at Dkt. No. 6.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

(*Id.*)  Third, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spine are severe impairments, while myofascial pain syndrome, left wrist and arm pain, finger pain, lower extremity knee pain, knee and toe pain, thoracic outlet syndrome, ventral hernia, hyperlipidemia, hair thinning, edema, fatigue, cellulitis, sinusitis, tobacco abuse disorder, depression, and anxiety are not severe.  (T 14-15.)  Fourth, the ALJ found that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  (T. 15.)  Specifically, the ALJ considered Listing 1.04 (disorders of the spine).  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a), because she was able to lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday. Additionally, the claimant was able to occasionally stoop and crouch.

(T. 16.)  Sixth, the ALJ found that Plaintiff is unable to perform her past work with the above limitations.  (T. 18-19.)  Seventh, and last, the ALJ found Plaintiff remains able to perform a significant number of other work in the national economy, as the additional non-exertional limitations in the RFC do not significantly erode the occupational base of sedentary work.  (T. 19-20.)

### D.    The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff makes six arguments in support of her motion for judgment on the pleadings.  First, Plaintiff argues that the ALJ failed to properly evaluate and give controlling weight to the opinion from treating physician Christopher Comeau, M.D.  (Dkt. No. 7, at 8-10 [Pl. Mem. of Law].)  More specifically, Plaintiff argues that Dr. Comeau's opinion was

consistent with the evidence and that the ALJ erred in characterizing the treatment she received as "conservative." (*Id.*) Plaintiff also argues that the ALJ improperly "cherry-picked" only certain findings from the opinion of the consultative examiner, an opinion that Plaintiff alleges was consistent with Dr. Comeau's opinion. (Dkt. No. 7, at 9 [Pl. Mem. of Law].)

Second, Plaintiff argues that the ALJ failed to properly assess her credibility. (Dkt. No. 7, at 10-12 [Pl. Mem. of Law].) Plaintiff argues that the objective evidence and her reported daily activities support the credibility of her allegations. (Dkt. No. 7, at 11-12 [Pl. Mem. of Law].)

Third, Plaintiff argues that the ALJ was inappropriately selective of the medical evidence and failed to properly consider all the evidence related to her mental impairment, including her history of medication changes and her lack of health insurance that prevented her from seeking more frequent treatment. (Dkt. No. 7, at 12-13 [Pl. Mem. of Law].)

Fourth, Plaintiff argues that the ALJ erred in affording no weight to all the evidence prior to April 23, 2010, the alleged onset date. (Dkt. No. 7, at 13-14 [Pl. Mem. of Law].)

Fifth, Plaintiff argues that the ALJ failed to properly assess the RFC by declining to incorporate the limitations from Dr. Comeau's opinion and Plaintiff's allegations about her abilities. (Dkt. No. 7, at 14-16 [Pl. Mem. of Law].)

Sixth, and last, Plaintiff argues that the ALJ erred in failing to obtain testimony from a vocational expert based on the non-exertional limitations imposed by her depression. (Dkt. No. 7, at 16-17 [Pl. Mem. of Law].)

Generally, Defendant makes six arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly weighed Dr. Comeau's opinion in finding it was not supported by the objective evidence or Plaintiff's reported daily activities.

(Dkt. No. 8, at 6-8 [Def. Mem. of Law].)  Defendant also argues that the consultative examiner's findings do not support Dr. Comeau's opinion, contrary to Plaintiff's argument, and that the ALJ was not required to adopt the totality of the consultative examiner's opinion.  (Dkt. No. 8, at 9-10 [Def. Mem. of Law].)

Second, Defendant argues that the ALJ properly assessed Plaintiff's credibility, noting that it was Plaintiff's burden to establish her functional limitations rather than the ALJ's burden to disprove her claims.  (Dkt. No. 8, at 12-14 [Def. Mem. of Law].)

Third, Defendant argues that the ALJ properly assessed Plaintiff's mental functioning and cited to evidence supporting those findings, and that Plaintiff fails to point to any evidence showing her mental impairments imposed work-related limitations.  (Dkt. No. 8, at 14-15 [Def. Mem. of Law].)

Fourth, Defendant argues that the ALJ properly declined to weigh heavily the evidence prior to the alleged onset date, as that period had already been adjudicated through a previous application in which Plaintiff had been found not disabled.  (Dkt. No. 8, at 15-16 [Def. Mem. of Law].)  Defendant further argues that nothing in the evidence prior to the alleged onset date would have altered the ALJ's conclusions.  (*Id.*)

Fifth, Defendant argues that the ALJ properly assessed the RFC because she did not commit errors in rejecting Dr. Comeau's opinion or in assessing Plaintiff's credibility.  (Dkt. No. 8, at 16-17 [Def. Mem. of Law].)

Sixth, and last, Defendant argues that the ALJ was not required to obtain vocational expert testimony because there was no evidence to support the existence of the mental limitations Plaintiff asserts.  (Dkt. No. 8, at 17-18 [Def. Mem. of Law].)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of

the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Whether the ALJ Assessed the Opinion Evidence In a Manner Consistent With The Regulatory Requirements

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 8, at 6-10 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). However, "[w]here an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), Report and

Recommendation adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)).  After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129).  "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'"  *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129-30).  The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant.  *See* 20 C.F.R. § 404.1527(c)(1)-(6).

On October 16, 2013, Dr. Comeau noted he had been treating Plaintiff with pain medications for chronic back pain from March 19, 2003, to the date of his opinion.  (T. 474.)  Dr. Comeau opined Plaintiff could lift and carry 10 pounds occasionally and less than 10 pounds frequently, stand or walk less than two hours in an eight-hour workday, needed to periodically alternate between sitting and standing to relieve pain or discomfort, and was limited in pushing and pulling with the upper and lower extremities.  (T. 475-76.)  Dr. Comeau opined she could occasionally climb and stoop, never balance, kneel, crouch or crawl, occasionally reach, handle, finger and feel, and was limited in her ability to work around temperature extremes, vibration, humidity, wetness, hazards, and fumes.  (T. 476-78.)  Dr. Comeau additionally opined that her pain was "present to such an extent as to be distracting to adequate performance of daily work activities," that physical activity "increases her pain to the extent that medication and/or bed rest is necessary," and that medication side effects would make her "restricted from the workplace"

and "unable to function at a productive level." (T. 479.)  Lastly, Dr. Comeau indicated that the limitations described in his opinion had been present since 2005.  (T. 480.)

The ALJ afforded very little weight to Dr. Comeau's opinion, finding it was not consistent with the opinion from consultative examiner Elke Lorensen, M.D., and the rest of the medical evidence during the relevant time period, including the "conservative treatment history with only narcotic medication." (T. 18.)  The ALJ also noted that Dr. Comeau's opinion was not consistent with the findings in his own treatment notes or with the objective imaging showing minimal cervical spine involvement during the relevant time period.  (*Id.*)

Contrary to Plaintiff's argument, this court finds no error in the ALJ's application of the treating physician rule.  (Dkt. No. 7, at 8 [Pl. Mem. of Law].)  The ALJ discussed the factors most relevant to assessing Dr. Comeau's opinion, notably the lack of support from the other evidence in the record, including Dr. Comeau's own treatment notes.  (T. 18.)  As noted above, the ALJ is not required to slavishly recite every factor from the treating physician rule, so long as her reasoning and adherence to the regulations is clear from her analysis, something which is true of the ALJ's explanation regarding the weight afforded to Dr. Comeau in this case.  *See Blinkovitch*, 2017 WL 782979, at *4.  This Court is therefore satisfied that the ALJ applied the correct legal standard (and applied it in a sufficient manner) when assessing Dr. Comeau's opinion.

Plaintiff argues that, contrary to the ALJ's assessment, Dr. Comeau's opinion was in fact supported by the objective medical evidence, including the opinion from Dr. Lorensen.  (Dkt. No. 7, at 8-10 [Pl. Mem. of Law].)  However, Plaintiff's arguments are not persuasive.  Notably, the majority of the regular treatment evidence – from Dr. Comeau and other sources – typically showed findings that Plaintiff was in no apparent distress with a normal gait, and did not note

any objective observations of musculoskeletal abnormalities related to Plaintiff's lower back, neck, or other joints. (*See e.g.*, T. 257, 260, 263, 266, 275, 278, 281, 285, 287, 290, 293, 296, 299, 302, 305, 308, 310, 312, 315, 317, 320, 322, 325, 328, 331, 334, 337.) On May 17, 2013, John Williams, M.D., observed pain with palpation of the bilateral sacral paraspinous muscles, intact sensation, 5/5 motor strength, a positive right straight leg raise test, and limited lumbar range of motion with flexion and extension. (T. 254.) An MRI of the cervical spine from July 18, 2013, showed a bulging disc with minimal impingement at the C4-C5 and C5-C6 levels as well as a small left-sided protrusion causing minimal impingement at the C6-C7 level. (T. 455.) On July 24, 2013, Dr. Lorensen observed Plaintiff was in no acute distress, had a normal gait, walked on her toes without problems, was able to squat 40 percent of normal range, used no assistive device, and needed no help changing, getting on or off the exam table, or in rising from the chair. (T. 457.) Dr. Lorensen also observed diminished range of motion in the cervical and lumbar spine, negative straight leg raising, limited right hip and knee flexion, 5/5 motor strength, normal hand and finger dexterity, and normal grip strength. (T. 458.) On the same date Dr. Comeau rendered his opinion, he observed Plaintiff had bilateral sacral paraspinous muscle pain, intact sensation and reflexes, 5/5 motor strength, limited lumbar range of motion with flexion and extension, and a positive right straight leg raise. (T. 506.) This evidence provides substantial support for the ALJ's assertions that Dr. Comeau's opinion was inconsistent with both his own observations and clinical findings as well as with the medical evidence in the record as a whole from the relevant time period. Inconsistency with the evidence can constitute a good reason for rejecting a treating physician's opinion. *See Saxon v. Astrue*, 781 F. Supp. 2d 92, 102 (N.D.N.Y. 2011) ("The less consistent an opinion is with the record as a whole, the less weight it is to be given.") (citing *Stevens v. Barnhart*, 473 F. Supp. 2d 357, 362 (N.D.N.Y.

11

2007)); *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (noting that an ALJ may reject an opinion from a treating physician "upon the identification of good reasons, such as substantial contradictory evidence in the record") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); 20 C.F.R. § 404.1527(c)(4) (indicating that the extent that an opinion is consistent with the record as a whole is one of the factors considered when determining the amount of weight to which an opinion is entitled).

Plaintiff's attempt to argue that Dr. Lorensen's examination and opinion were consistent with and supportive of Dr. Comeau's opinion is also not availing. (Dkt. No. 7, at 9 [Pl. Mem. of Law].) Plaintiff does not attempt to explain how the diminished ranges of motion Dr. Lorensen observed are consistent with the much-less-than-sedentary opinion of Dr. Comeau, nor how Dr. Lorensen's opinion of moderate restrictions for turning the head sideways, looking upwards, bending, lifting, reaching, kneeling, and squatting is consistent with that extremely restrictive opinion. Plaintiff's argument is simply not tenable in light of the evidence.

The evidence also supports the ALJ's rejection of Dr. Comeau's limitations related to Plaintiff's neck and arms in particular since, as the ALJ noted, there is no evidence of a cervical spine impairment impacting Plaintiff's functioning in any way until the July 2013 MRI, which occurred after the date last insured. (T. 455.) Plaintiff argues that the ALJ engaged in impermissible "cherry picking" of the evidence by declining to adopt the portion of Dr. Lorensen's opinion for moderate restrictions in turning the head sideways, looking upwards, and reaching, but the ALJ's findings are supported by the lack of evidence of a cervical spine impairment prior to the date last insured. What Plaintiff fails to note is that Dr. Lorensen's examination and opinion were themselves from after the date last insured. The ALJ was not required to accept limitations from this opinion that were related to impairments that were not

well-established or documented during the relevant period at issue of Plaintiff's Title II claim, and was in fact not required to accept the totality of the consultative examiner's opinion if portions of that opinion were not supported by the relevant evidence as a whole. *See Kitka v. Comm'r of Soc. Sec.*, No. 5:15-CV-0060, 2016 WL 825259, at *9 (N.D.N.Y. Feb. 9, 2016) ("There is no requirement that the ALJ accept every limitation in the opinion of a consultative examiner.") (citing *Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013)).

Lastly, Plaintiff argues that the ALJ erred in characterizing her treatment history as conservative because, prior to losing her health insurance, she had undergone back surgery and received physical therapy, injections, and chiropractic care. (Dkt. No. 7, at 8-9 [Pl. Mem. of Law].) This argument fails for the simple fact that the record does not show Plaintiff was suffering significant negative effects from being limited to treatment with pain medication by her financial situation. The treatment notes show that Plaintiff was maintained on hydrocodone for pain throughout much of the relevant period, and yet, despite no more aggressive treatment, sources did not note any objective symptoms from her lumbar spine impairment until a month prior to her date last insured. (*See e.g.*, T. 257, 260, 263, 266, 275, 278, 281, 285, 287, 290, 293, 296, 299, 302, 305, 308, 310, 312, 315, 317, 320, 322, 325, 328, 331, 334, 337.) Therefore, even if the ALJ did err in citing to Plaintiff's conservative treatment history without considering her lack of ability to afford greater care, any such error would be harmless because there is no objective evidence to suggest Plaintiff's symptoms were uncontrolled with medication therapy. In any event, the ALJ's finding that Dr. Comeau's opinion was inconsistent with the rest of the evidence constitutes a good reason sufficient to support the weight afforded to that opinion.

Based on all of the above, the ALJ provided good reasons supported by substantial evidence for affording very little weight to Dr. Comeau's opinion. Remand is therefore not warranted on this basis.

**B.      Whether the Credibility Finding Is Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 8, at 12-14 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

In determining whether a claimant is disabled, the ALJ must also make a determination as to the credibility of the claimant's allegations. "'An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 205 (N.D.N.Y. 2012) (quoting *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)). The Second Circuit recognizes that "'[i]t is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant,'" and that "[i]f there is substantial evidence in the record to support the Commissioner's findings, 'the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain.'" *Schlichting*, 11 F. Supp. 3d at 206 (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983); *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)). Due to the fact that the ALJ has the benefit of directly observing a claimant's demeanor and "other indicia of credibility," the ALJ's credibility assessment is

generally entitled to deference.  *Weather v. Astrue*, 32 F. Supp. 3d 363, 381 (N.D.N.Y. 2012) (citing *Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999)).

In challenging the ALJ's credibility finding, Plaintiff argues that the ALJ "failed to properly consider the seven statutory factors [] and mischaracterized evidence in the record." (Dkt. No. 7, at 11-12 [Pl. Mem. of Law].)  Plaintiff more specifically argues that Plaintiff's "alleged impairments and limitations [] have been well-documented and agreed to in severity by multiple doctors," as well as that her alleged difficulty with daily activities and documented history of seeking treatment to relieve her symptoms support her credibility.  (*Id.*)  Plaintiff goes so far as to assert that "there is no evidence throughout the record that would show [her allegations] to be anything but entirely credible."  (Dkt. No. 7, at 12 [Pl. Mem. of Law].)

Plaintiff's arguments are conclusory, unsupported, and unavailing.  The ALJ found Plaintiff's allegations were not fully credible based on a lack of support from the objective medical evidence and the utilization of conservative treatment modalities during the relevant period, which the ALJ acknowledged was in part due to lack of health insurance.  (T. 17-18.)  The ALJ also noted the activities Plaintiff reported at the hearing, which included watching television, talking to her stepchildren, occasionally going to the store, and doing some laundry with rest breaks.  (T. 16-17.)  The ALJ noted that Plaintiff had reported to consultative examiner Dr. Lorensen that she cooked four times per week, did laundry three times per week with assistance, shopped once a week with assistance, showered and dressed daily, went to the store, and socialized with friends.  (T. 14.)  The ALJ also noted that Plaintiff reported to consultative examiner Dennis Noia, Ph.D., that she was able to dress, groom herself, cook, prepare food, do general cleaning and laundry, shop, manage money, and drive, though she did indicate she did these activities with a slow pace and frequent rest breaks.  (*Id.*)

Contrary to Plaintiff's vague assertions that the objective evidence fully supports her allegations, this Court has already noted above that evidence related to Plaintiff's spine impairments showed few abnormalities that would suggest she was as limited as she alleged. (*See e.g.*, T. 257, 260, 263, 266, 275, 278, 281, 285, 287, 290, 293, 296, 299, 302, 305, 308, 310, 312, 315, 317, 320, 322, 325, 328, 331, 334, 337.)  These same treatment notes also show that, despite her allegations of depression, Plaintiff was routinely observed to be alert and oriented with an appropriate affect and demeanor, intact recent and remote memory, and normal speech. (*Id.*)  Imaging of the cervical spine showed only minimal impingement.  (T. 445.)  The ALJ's finding that Plaintiff's allegations were not consistent with the objective evidence is supported by substantial evidence.

In terms of Plaintiff's reported activities of daily living, the ALJ acknowledged that Plaintiff reported some limitations, but concluded that these activities suggested a level of functioning that was inconsistent with Plaintiff's allegations of total disability.  (T. 16-17.) Plaintiff has not explained how her reported activities of daily living were inconsistent with the ability to perform a range of sedentary work, and this Court finds that the ALJ's interpretation of those activities was reasonable and based on a balanced consideration of the available evidence. *See Hart v. Astrue*, 32 F. Supp. 3d 227, 235 (N.D.N.Y. 2012) ("To the extent Dr. Magsino's opinion is capable of more than one reasonable interpretation, this Court must defer to the interpretation of the ALJ and may not substitute its own opinion."); *Brouillette v. Astrue*, 901 F. Supp. 2d 328, 333 (N.D.N.Y. 2012) ("If the evidence is deemed susceptible to more than one rational interpretation, then the Commissioner's conclusion must be upheld.").

Nor is there any merit to Plaintiff's argument that the ALJ failed to apply the proper standard when assessing credibility.  The ALJ included a recitation of the relevant standard and

her discussion shows that she considered the factors that were applicable to the specific factual situation in this case. (T. 16-18.) Plaintiff's conclusory argument that the ALJ failed to properly consider the required factors is therefore unavailing. Similarly, Plaintiff does not explain in what way the ALJ allegedly mischaracterized the evidence or provide any examples of such mischaracterization. (Dkt. No. 7, at 11-12 [Pl. Mem. of Law].)

For all of the above reasons, the credibility finding is supported by substantial evidence, and remand is not warranted on this basis.

C.     **Whether the ALJ's Assessment of Plaintiff's Mental Impairments and the Related Evidence is Consistent With Applicable Legal Standards and Supported By Substantial Evidence**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 8, at 14-15 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

The regulations require the Agency to follow a special technique when assessing mental impairments, which includes rating the degree of functional limitation in the four broad functional areas of activities of daily living, social functioning, concentration, persistence and pace, and episodes of decompensation resulting from the impairment. 20 C.F.R. § 404.1520a(c). In evaluating mental impairments and their resulting functional limitations, the ALJ is required to consider "all relevant evidence to obtain a longitudinal picture of [Plaintiff's] overall degree of functional limitation." *Id*.

Plaintiff argues that the ALJ "did not adequately consider the Plaintiff's circumstances" when analyzing the evidence related to her mental impairments. (Dkt. No. 7, at 12-13 [Pl. Mem. of Law].) Plaintiff cites to notations that her depression medication was changed on many instances of treatment, asserting that these changes contradict the ALJ's statements that Plaintiff

had a good response to medication. (Dkt. No. 7, at 12 [Pl. Mem. of Law].) However, the treatment records show that, despite medication changes, Plaintiff consistently displayed an appropriate affect and demeanor, intact recent and remote memory, and normal speech. (*See e.g.*, T. 257, 260, 263, 266, 275, 278, 281, 285, 287, 290, 293, 296, 299, 302, 305, 308, 310, 312, 315, 317, 320, 322, 325, 328, 331, 334, 337.) Additionally, Plaintiff typically reported her mental health symptoms were only intermittent and present "about half the time," and even reported on multiple occasions that she did not have any current symptoms. (*See e.g.*, T. 268, 274, 283, 289, 292, 295, 301, 304, 307, 309, 311, 314, 316, 321, 324, 327, 333, 336.) Plaintiff vaguely asserts that the ALJ improperly selected only the mental health evidence that supported her findings, yet fails to point to any evidence that showed mental symptoms contrary to the ALJ's findings.

Plaintiff also argues that the ALJ should not have considered the lack of treatment from a mental health specialist because Plaintiff did not have health insurance and could not afford to see a specialist. (Dkt. No. 7, at 12 [Pl. Mem. of Law].) Plaintiff's argument ignores the fact that there is no evidence to support that treatment with a specialist would have revealed any greater symptoms or functional effects from depression, as the longitudinal treatment from Dr. Comeau and others for depression did not reveal mental abnormalities. (*See e.g.*, T. 257, 260, 263, 266, 275, 278, 281, 285, 287, 290, 293, 296, 299, 302, 305, 308, 310, 312, 315, 317, 320, 322, 325, 328, 331, 334, 337.) Consequently, there is no evidence in the record to suggest that Plaintiff would have required treatment with a mental health specialist even if she had been able to afford such treatment.

For the above reasons, the ALJ's assessment of Plaintiff's mental impairments was consistent with applicable legal standards and supported by substantial evidence. Remand is not warranted on this basis.

**D.    Whether the ALJ Appropriately Assessed the Evidence Prior to the Alleged Onset Date**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 8, at 15-16 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

Plaintiff argues, without citation to any legal authority, that the ALJ erred in affording no weight to the opinion evidence prior to the alleged onset date. (Dkt. No. 7, at 13-14 [Pl. Mem. of Law].) Plaintiff acknowledges that the period up to the date of the amended alleged onset date had already been adjudicated in proceedings related to a previous disability benefits application, yet asserts that the treatment evidence from that time period is relevant to show that Plaintiff's spinal impairment had "significantly intensified" and that she had other impairments that began prior to her alleged onset date that also impacted her functioning. (*Id*.) Plaintiff's argument fails for multiple reasons.

First, the Agency had previously found Plaintiff was not disabled during the time period prior to the alleged onset date of April 23, 2010, a finding that, as Defendant notes, is subject to considerations of *res judicata*. (Dkt. No. 8, at 15-16 [Def. Mem. of Law].) Absent an indication that Plaintiff has submitted new evidence from that time period that was not considered by the Agency when adjudicating that prior application (something which has not been alleged or shown), there can be no logical argument that evidence prior to the alleged onset date could be used to support Plaintiff's arguments that she is disabled. Additionally, the ALJ explicitly noted

that she found "no grounds upon which to base a reopening; the prior unfavorable determination is final and binding." (T. 11.) This Court may not re-adjudicate a period of time that has already been adjudicated to finality, and if the Agency found that the evidence prior to April 23, 2010, did not support a finding of disability and the ALJ adjudicating the current application found no grounds to reopen the prior application, this Court is bound by those findings and may not now reevaluate that same evidence in search of a different conclusion. *See Saxon*, 781 F. Supp. 2d at 99 ("The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of [42 U.S.C.] § 405(g), and thus federal courts lack jurisdiction to review the administrative decision not to reopen a previous claim for benefits.") (citing *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)); *Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) ("Administrative *res judicata* is appropriately applied where a prior determination on the same facts and same issues made by the Commissioner has become final by either administrative or judicial action.") (citing 20 C.F.R. § 404.957(c)(1)). Consequently, Plaintiff's argument that the evidence prior to the alleged onset date supports her claim of disability is contrary to the Agency's previous final judgment and not logically or legally tenable.

Second, Plaintiff's assertion that this evidence was material as a basis of comparison to show that her spinal impairment had significantly worsened is simply not supported by the evidence. As already discussed previously, the treatment evidence from the relevant period shows almost no objective symptoms related to her lumbar or cervical spine impairment on the multitude of examinations with her treating physicians. (*See e.g.*, T. 257, 260, 263, 266, 275, 278, 281, 285, 287, 290, 293, 296, 299, 302, 305, 308, 310, 312, 315, 317, 320, 322, 325, 328, 331, 334, 337.) The evidence from the relevant time period therefore contradicts Plaintiff's arguments that her condition had significantly worsened since prior to the alleged onset date.

Third, whether or not treatment records prior to the alleged onset date showed evidence of additional impairments is of little relevance to the analysis here because there is no evidence that Plaintiff continued to seek treatment for any such additional impairments or experienced any symptoms or limitations as a result of those impairments at any time between the alleged onset date and the date last insured.  Since consideration of these additional impairments prior to the alleged onset date would not impact the ALJ's findings as they relate to the relevant period, there was no reason the ALJ would have been required to assess the evidence related to those impairments with any greater scrutiny.

For the above reasons, the ALJ did not err in declining to afford significant weight to evidence prior to the alleged onset date.  Remand is not warranted on this basis.

### E.      Whether the RFC Finding is Supported By Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 8, at 16-17 [Def. Mem. of Law].)

As Defendant notes, Plaintiff's general argument that the ALJ failed to properly assess RFC is little more than a reiteration of her challenges to the weight afforded to the opinion evidence and the credibility finding.  (Dkt. No. 7, at 14-16 [Pl. Mem. of Law]; Dkt. No. 8, at 16 [Def. Mem. of Law].)  Consequently, this argument fails for the same reasons already discussed previously, and remand is not warranted on this basis.

### F.      Whether the ALJ Erred in Declining to Obtain Vocational Expert Testimony When Making the Step Five Finding

After careful consideration, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 8, at 17-18 [Def. Mem. of Law].)  To those reasons, this Court adds the following analysis.

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at Step Five "'to show there is other work that [the claimant] can perform.'" *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)). "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert*." Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)). "However, the 'mere existence of a non-exertional impairment does not automatically . . . preclude reliance on the [Medical-Vocational] guidelines.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 603). "A non-exertional impairment 'significantly limits a claimant's range of work when it causes an additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Zabala*, 595 F.3d at 410-11 (quoting *Bapp*, 802 F.2d at 605-06).

In explaining the Step Five finding, the ALJ found that application of the Medical-Vocational Guidelines was appropriate because the additional limitations in the RFC "had little or no effect on the occupational base of sedentary unskilled work." (T. 20.) More specifically, the ALJ noted that "[SSR]s 83-14, 85-15, and 96-9p all indicate that the claimant's occasional stooping and crouching limitations would not significantly erode the sedentary occupational base." (*Id.*)

Of note, Plaintiff does not challenge the ALJ's determination that the additional physical non-exertional limitations that were included in the RFC did not impose a significant limitation on Plaintiff's ability to perform sedentary work in the national economy. Rather, Plaintiff argues

that the ALJ was required to obtain testimony from a vocational expert based on non-exertional limitations caused by Plaintiff's mental impairment. (Dkt. No. 7, at 16-17 [Pl. Mem. of Law].) Plaintiff's argument is not availing, as it merely revives her previous argument that the ALJ failed to properly assess her mental impairments and adds the assertion that the ALJ was required to present evidence regarding mental limitations to a vocational expert. However, as already discussed, the evidence in the record supports the ALJ's findings that Plaintiff's mental impairment was not severe and did not impose any functional limitations. Since there was no evidence to establish mental limitations, the ALJ was not required to include mental limitations in the RFC, and consequently not required to consider them as non-exertional limitations at Step Five.

The ALJ provided sufficient explanation to show the Step Five finding was supported by substantial evidence, and consultation of a vocational expert was not necessary based on the absence of non-exertional limitations imposing a significant limitation on Plaintiff's ability to perform the range of sedentary work. Remand is not warranted on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 8) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: September 11, 2017
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge